# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

HOTEL EMPLOYEES and RESTAURANT )
EMPLOYEES INTERNATIONAL UNION )
WELFARE FUND, HOTEL EMPLOYEES and )
RESTAURANT EMPLOYEES )
INTERNATIONAL UNION PENSION FUND, )
and H.W. WARD as Fiduciary of HOTEL )
EMPLOYEES and RESTAURANT )
EMPLOYEES INTERNATIONAL UNION ) No. 06 C 2889
WELFARE FUND and HOTEL EMPLOYEES )
and RESTAURANT EMPLOYEES )
INTERNATIONAL UNION PENSION FUND, ) Magistrate Judge Maria Valdez
 )
    Plaintiffs, )
 )
v. )
 )
OAKLAND HILLS COUNTRY CLUB, )
 )
    Defendant. )

## MEMORANDUM OPINION AND ORDER

Plaintiffs, two multiemployer trust funds, have filed this two-count action pursuant to the Employment Retirement Income Security Act of 1974 ("ERISA") against defendant employer to collect unpaid contributions to the two trust funds. Pursuant to the terms of a collective bargaining agreement between only defendant employer and its local union, defendant employer has moved to compel arbitration of its dispute with plaintiff trust funds and dismiss this action.[1] The parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons set forth below, Defendant's Motion to Compel Arbitration [Doc. No. 14] is DENIED.

---

[1] Although Defendant filed a motion to compel, its prayer for relief also requests dismissal of the action. (Mot., at 3).

## I. BACKGROUND

Plaintiffs, Hotel Employees and Restaurant Employees International Union Welfare Fund and Hotel Employees and Restaurant Employees International Pension Fund (the "Trust Funds"), are multiemployer funds governed by ERISA. (Compl., at ¶¶ 4-5). The Trust Funds receive contributions from participating employers, like Defendant Oakland Hills Country Club, pursuant to collective bargaining agreements between employers and local unions. *Id.* at ¶¶ 8-9. On June 29, 2000, Defendant Oakland Hills Country Club (the "Club") and the Hotel Employers and Restaurant Employers Union Local 24, AFL-CIO (the "Local Union") entered into a collective bargaining agreement (the "CBA"). (CBA, attach. to Mem. Supp. Mot. as Ex. A).[2] The CBA bound the Club and the Local Union to all of the terms of the "Agreement and Declaration of Trust of said Hotel Employees and Restaurant Employees International Union Welfare/Pension Funds" (the "Welfare and Pension Trust Agreements"). *Id.* at § 12.4.1. According to the terms of the CBA, any provision of the CBA "that is inconsistent with the [Welfare and Pension Trust Agreements], rules or procedures established by the Trustees shall be null and void." *Id.*

Pursuant to the terms of the Welfare and Pension Trust Agreements, the Trustees may audit the books and records of the Club to determine whether it is making complete contributions. (Welfare and Pension Trust Agreements, at §§ 9.03, respectively, attached to Mem. Opp'n as Exs. 4 and 5). After completing a payroll audit of the Club, the Trustees issued the Club a bill demanding payment of $31,095.78 to the Welfare Fund and $35,359.09 to the Pension Fund. (State't Facts Supp. Mem. Opp'n, at ¶ 3). The Club has not paid these amounts;

---

[2] The CBA states that it is effective beginning May 1, 1999 (CBA, at 1); however, the copy submitted to the Court was signed June 29, 2000." *Id.* at 26.

2

accordingly, the Trust Funds have filed this action to collect unpaid contributions. *Id.* at ¶¶ 4-5. Relying on a section of the CBA that allows the Local Union to refer grievances between the Club and its employees to arbitration, the Club has moved to compel arbitration of its dispute with the Trust Funds and dismiss this action. Specifically, the Club argues that "the inclusion of Section 12.4.1 [in the CBA] directly prohibiting unilateral increases in pension and welfare contribution rates brings the Fund under the purview of the arbitration provision of the CBA." (Mem. Supp. Mot., at 7). The Trust Funds maintain since they were not a party to the CBA they are not bound by any of its provisions. Instead, because the CBA incorporates by reference the terms of the Welfare and Pension Trust Agreements (CBA, at § 12.4.1), the Trust Funds argue that the Club is bound by the provisions in the Welfare and Pension Trust Agreements that provide the Trust Funds may initiate civil litigation to collect unpaid employer contributions. (Welfare and Pension Trust Agreements, at §§ 9.05, respectively).

## II. DISCUSSION

The resolution of this case is governed by the Supreme Court's analysis in *Schneider Moving & Storage Co. v. Robbins*, 466 U.S. 364 (1984) and the Seventh Circuit's analysis in *Pipe Fitters' Welfare Fund, Local Union 597 v. Mosbeck Indus. Equip., Inc.*, 856 F.2d 837 (7th Cir. 1988). In *Schneider*, the Supreme Court faced the issue that is before this Court: "whether the trustees of two multiemployer trust funds may seek judicial enforcement of the trust terms against a participating employer without first submitting to arbitration an underlying dispute over the meaning of a term in the employer's collective-bargaining agreement." 466 U.S. at 365. After reviewing the relevant collective bargaining and trust agreements, the court held "that neither the trust agreements nor the collective-bargaining agreements at issue here evidence any

3

intent to condition the contractual right of the trustees to seek judicial enforcement of the trust provisions on exhaustion of the arbitration procedures contained in petitioners' collective-bargaining agreements." *Id.* at 376. Accordingly, this Court turns to the CBA and the Welfare and Pension Trust Agreements to determine if either express any intention that the CBA's arbitration provision trumps the Trust Funds' rights outlined in the Welfare and Pension Trust Agreements. *Pipe Fitters*, 856 F.2d at 840 ("*Schneider* stands for the proposition that courts must carefully examine the pertinent trust and collective bargaining agreements to determine whether the parties intended to arbitrate disputes between trust funds and employers").

### A. Trust Agreements

The Welfare and Pension Trust Agreements, like those in *Schneider* and *Pipe Fitters*, fail to express an intent to subject the Trust Funds' contribution claims to arbitration. Rather, the Welfare and Pension Trust Agreements explicitly provide that the "rights of Trustees contained herein shall be enforceable, at the discretion of the Trustees, in a court of competent jurisdiction." (Welfare and Pension Trust Agreements, at §§ 9.05, respectively). Further, the Welfare Fund Trust Agreement provides that when an employer reports an ineligible employee to the Trust Funds, the "Trustees may commence legal proceedings in federal court" when conditions precedent have been met. (Welfare Trust Agreement, at § 9.07). "These provisions unambiguously allow the administrators of the Trust Funds to bring civil actions to enforce contribution requirements." *Pipe Fitters*, 856 F.2d at 840. Accordingly, this Court concludes that the Welfare and Pension Trust Agreements "do not evidence an intention to require the Trust Funds to submit contribution disputes to arbitration." *Id.*

4

## B. Collective Bargaining Agreement

The CBA, like those in *Schneider* and *Pipe Fitters*, also fails to express an intent to subject the Trust Funds' contribution claims to arbitration. First, the CBA incorporates by reference the terms of the Welfare and Pension Trust Agreements. (CBA, at § 12.4.1). Specifically, the CBA provides that the parties to the CBA—the Local Union and the Club—(1) "agree to abide and be bound by all procedures established and actions taken by the Trustees pursuant to [the Welfare and Pension] Trust Agreement[s]," and (2) any provision in the CBA "that is inconsistent with the [Welfare and Pension Trust Agreements], rules or procedures established by the Trustees, shall be null and void." *Id.* As noted *supra*, the Welfare and Pension Trust Agreements provide that Trust Funds may initiate civil litigation to collect unpaid employer contributions. The Court "must assume, therefore, that the parties to the collective bargaining agreement were aware of th[is] language in the trust agreements . . . [T]his is significant evidence of an intention that the Trust Funds not be bound by arbitration." *Pipe Fitters*, 856 F.2d at 841. Notwithstanding this, relying on state law, the Club argues that "as the subject CBA incorporates the Fund's Trust Agreement by reference, this matter must be deferred to arbitration in its entirety" pursuant to the CBA's arbitration provision. (Mem. Supp. Mot., at 10). Precedent, however, establishes that the reverse is true. *Schneider*, 466 U.S. at 374; *Pipe Fitters*, 856 F.2d at 841. Consequently, this Court "will not infer that the parties to the two multiemployer trust funds intended to condition the trustees' enforcement authority on the arbitration procedures contained in [the Club's] separate collective bargaining agreement[ ]." *Schneider*, 466 U.S. at 374.

Second, the arbitration provision of the CBA provides that grievances between the Club and its employees may be referred to arbitration only by the Local Union (CBA, at § 13.1). Notwithstanding this, the Club argues that the Trust Funds should be subject to the CBA's

5

arbitration provision because (1) the CBA states that the "Trustees shall not have the power to unilaterally increase the contribution rate negotiated by the Club and Union," *Id.* at § 12.4.1, and (2) the Trust Funds "reviewed and approved the CBA prior to its execution" without making any modifications to its arbitration provision (Mem. Supp. Mot, at 7; Reply, at 6). The Club fails to articulate how a reference to a third party in a contract binds that party to the contract. Similarly, the Club fails to explain how a third party's review of a contract binds it to the contract. The CBA states that it is only an agreement between the Club and the Local Union (CBA, at 1), and was signed only by their respective representatives on June 29, 2000. *Id.* at 26. Thus, "[i]t is unreasonable to infer that the parties to the [CBA], or to the trust agreements, intended the trustees to rely on the Union to arbitrate their disputes with the employer." *Schneider*, 466 U.S. at 375.[3]

## III. CONCLUSION

Neither the terms of the Welfare and Pension Trust Agreements nor the CBA evidence any intent to condition the contractual right of the Plaintiffs to seek judicial enforcement of the trust agreements on exhaustion of the CBA's arbitration procedures. Defendant's Motion to Compel Arbitration [Doc. No. 14] is DENIED.

**SO ORDERED.**

**ENTERED:**

Dated: August 6, 2007

HON. MARIA VALDEZ
United States Magistrate Judge

---

[3] Unlike *Jaffee v. Shanin Co.*, 763 F.Supp. 286 (N.D. Ill. 1991), a case in which the Club relies upon in its reply, the Trust Funds in the present case were not parties to the CBA. In the present case, there is (1) the CBA between the Club and the Local Union, which contains an arbitration clause to resolve grievances between the Club and its employees; and (2) the Welfare and Pension Trust Agreements—incorporated by reference into the CBA—which provide that the Trust Funds may file civil actions to collect unpaid employer contributions. In *Jaffee*, there was only one agreement: a collective bargaining agreement between the employer, union, and the trust fund. 763 F.Supp. at 290. There was no separate trust agreement. *Id.* Because the collective bargaining agreement in *Jaffee* contained an arbitration clause that bound the employer, union, and trust fund, the *Jaffee* court held the arbitration clause compelled the trust fund to arbitrate its contribution claims before filing civil litigation. *Id.* at 291-92.